IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

~~JACKSON~~ Eastern DIVISION



| | |
|---|---|
| Dr. Detra Bishop | PLAINTIFF |
| VS. | CIVIL ACTION NO. 4:11cv56 HTW-LRA |
| Board of Education, Wayne County School District | |
| Robert Dean, Superintendent of Education | |
| Keith Clay, Deputy Superintendent of Education | |
| Tina Harrison, Special Education Director | |
| Billy Ray Jones, Wayne County High School Principal | |
| Leroy Luke, Wayne County High School Assistant Principal | DEFENDANTS |

## COMPLAINT

COMES NOW, plaintiff, Dr. Detra Bishop, pro se, and for cause of action against the defendants, Wayne County School District's Board of Education, Superintendent of Education (Robert Dean), and Deputy Superintendent of Education (Keith Clay) Tina Harrison (Special Education Director), Billy Ray Jones (Wayne County High School Principal), and Leroy Luke (Wayne County High School Assistant Principal), would state:

### JURISDICTION

I, Dr. Detra Bishop, was employed by the Wayne County High School around July 1, 2006 and was terminated without due process on October 15, 2010. I believe my constitutional rights have been violated: Article Fourteen (Section1), the Civil Rights Act of 1871 (Title 42, section 1983), and Title VII of the Civil Rights Act of 1964. I have been discriminated against and denied my constitutional rights.

1

**1.**

The defendant <u>Wayne County School Board of Education</u> are adult resident citizens of the County of <u>Wayne</u>, State of Mississippi.

The defendant <u>Robert Dean</u> is an adult resident citizen of the County of <u>Wayne</u>, State of Mississippi.

The defendant <u>Keith Clay</u> is an adult resident citizen of the County of <u>Wayne</u>, State of Mississippi.

The defendant <u>Tina Harrison</u> is an adult resident citizen of the County of <u>Wayne</u>, State of Mississippi.

The defendant <u>Billy Ray Jones</u> is an adult resident citizen of the County of <u>Wayne</u>, State of Mississippi.

The defendant <u>Leroy Luke</u> is an adult resident citizen of the County of <u>Wayne</u>, State of Mississippi.

## FACTS

I suffered and do suffer mental anguish along with other problems related to the actions of the defendants who were responsible for my termination, which led my loss of reputation, wages, property, and freedom.

## RELIEF

I am seeking the amount of $100 million dollars in relief for the mental anguish, psychological pain, and other suffering caused by the loss of my job.

Respectfully submitted, this  25  day of  March , 20 11 .

_Detra Bishop, PhD_
(Signature of Plaintiff)

<u>Dr. Detra Bishop</u>
<u>P.O. Box 9164</u>
<u>Moss Point, MS 39562</u>
<u>(601) 671-1555</u>

2

# PERSONS BEING SUED

**School Board of Education**

Wayne County School District

810 Chickasawhay Street

Waynesboro, MS 39367

**Tina Harrison**

Office of Special Services

Wayne County School District

810 Chickasawhay Street

Waynesboro, MS 39367

**Robert Dean**

810 Chickasawhay Street

Waynesboro, MS 39367

1069 Clara Road

Waynesboro, MS 39367

**Billy Ray Jones**

Wayne County High School

Wayne County School District

810 Chickasawhay Street

Waynesboro, MS 39367

**Keith Clay**

810 Chickasawhay Street

Waynesboro, MS 39367

63 Mozingo Richey Road

Waynesboro, MS 39367

**Leroy Luke**

Wayne County High School

Wayne County School District

810 Chickasawhay Street

Waynesboro, MS 39367

# Documentation Sheet

**Detra Bishop**
**138 Azalea Dr**
**P. O. Box 228**
**Waynesboro, MS 39367**
**(601) 735-5852**

| | | |
|---|---|---|
| Wayne County High School<br>Billy Ray Jones, Supervising Principal<br>Leroy Luke, Principal<br>1325 Azalea Dr Waynesboro, MS 39367<br>(601) 735-2851 | Office of Special Services<br>Tina Harrison, Director<br>1513 Sullivan Dr<br>Waynesboro, MS 39367<br>(601) 735-3811 | Wayne County School District<br>Robert Dean, Superintendent<br>Keith Clay, Deputy Superintendent<br>810 Chickasawhay St<br>Waynesboro, MS 39367<br>(601) 735-4871 |

| Date | Contact | Reference | Notes |
|---|---|---|---|
| Dec 2009 | Mississippi Dept of Education (MDOE)<br>Ms. D. Caldwell | Administrator's Licensure requirements<br><br>(Package)<br><br>(Mail) | • Making preparation for Mississippi Alternate Path to Quality School Leadership (MAPQSL)<br>• Informed that I would be getting paid for the PhD degree in education<br>• Asked what I needed to do<br>• Informed to submit a new teacher package for an upgrade<br>• Submitted package to MDOE on 12/11/2009<br>• Received State of Mississippi Licensure posted 12/18/2009 that reflected 01/07/2010 as the issue date<br>• Delivered copies of new Educator's License that reflected the upgrade to Wayne County High School, the Office of Special Services, and the |

| | | | |
|---|---|---|---|
| | | | Superintendent's office |
| | | | • Phoned the superintendent's office (Mavis) regarding effective date of pay increase |
| Jan 2010 | Doug Everett and Mavis Longmire | Effective date of pay increase<br><br>(Mail)<br><br><br>(Emails) | • Received a second copy of the State of Mississippi Licensure posted 1/25/2010 that reflected a corrected date of 12/17/2010 as the effective date of the upgrade<br><br>• Submitted copies to administrators<br><br>• Followed up with questions about effective date of pay increase<br><br>• Scheduled as appointment with Robert Dean via Donna Jones, secretary |
| | Eric Ledlum | Capella University Online | • Admitted to the Leadership in Educational Administration program January 23, 2010<br><br>• MAPQSL requires the completion of graduate hours in educational administration |
| Feb 2010 | Robert Dean | Administrator's License<br><br>(Emails)<br><br><br><br>(Emails) | • Met with District Superintendent of Education, Robert Dean to discuss a recommendation for me to attend the 2010 summer session of MAPQSL.<br><br>At this first meeting with Robert Dean, he asked me the details of the MAPQSL and wanted to know where he could get information online about it. I left my packet (2/2/10 @3:30 pm) and gave him the information he needed to access it online at the MDOE.<br><br>• Followed up with Dean's secretary, |

|  |  |  |  |
|--|--|--|--|
|  |  |  | Donna by phone on 2/10/10 at 4:02 pm.<br><br>• Went for follow-up appointment with Robert Dean to discuss MAPQSL on 2/15/10. I gave him a copy of my new license. Dean gave his verbal approval for me to attend MAPQSL and said that I should also attend the grant writing course with the principals. During this conversation, he said to me, "Come sit with me."<br><br>He was seated behind the receptionist counter. There were no other chairs to sit in. I looked around to see who he was talking to. We were in the office alone. I asked him if he was talking to me. Before he could answer someone walked in the door. I told him I would pick up the packet the following day because I had to have a written signature on my packet —that I could not attend the course on a verbal approval. me to come back<br><br>He jumped up quickly from his seat and told me to leave the packet on his desk and he would get to it. He walked out the office and the gentleman who had entered the building walked out behind him. I left.<br><br>• I followed up with a phone call to Donna. She told me to drop by after work on 2/15/10 to pick up the packet.<br><br>Shortly after I arrived at the office, Jason Hamilton (my assistant) walked in. Dean told Donna that he could not see me and to schedule me another appointment for the following day. However, he said, "Jason, come on in." |

| | | | |
|---|---|---|---|
| | | | He met with Jason.<br><br>• 2/16/10 I returned to the office to pick up my packet and was told by Donna that it had been sent to me via interoffice mail. It was unsigned. I returned it and sent to my school.<br><br>• When I checked my interoffice mailbox a few days later, the package was in the box unsigned. I returned it with an email indicating that it was not signed. He it back without signature. (I understood then that he had no intention of signing it.)<br><br>• After the invitation to "sit with" him and his refusal to sign my packet for the administrator's license—which I needed for promotional reasons—I was not comfortable about making another appointment. I keep my distance from him even now. |
| Mar 2010 | Leroy Luke Security | WCHS<br><br>(Photos ) | • The deadline for the MAPQSL was March 1st. Applicants must be recommended by the superintendent.<br><br>• Begins harassing me about parking my car in the lot across the street. I informed him that B R Jones had given me permission to park across from the classroom where the football team leaves their cars on game days.<br><br>Luke would just walk into my class in the middle of sessions and tell me to get my car moved. (I started parking in the designated lot across the street, but noticed that others were still parking on the fence line and that athletes were parking in front of my classroom during game days. (Parking regulations |

| | | | |
|---|---|---|---|
| | | Mississippi Department of Education (MDOE)<br><br>Prince Staten<br><br>Robert Dean<br><br>Doug Everett<br><br>(Educator License)<br><br><br><br><br><br>(See School Board Minutes) | in these areas were only enforced when this incident got underway. (I noticed that there were no cars in the area on October 1—that is after my reprimand.)<br><br>• I periodically parked on the fence line with other where other cars were others parked daily undisturbed (to include Nicole McCardle, Dollie Graham, Eugene Leverette, and others)<br><br>• For a few months inquires were made about when to start paying me my salary increase. Conversations went back and forth between the MDOE, Prince Staten, Robert Dean, and Doug Everett.<br><br>I eventually went in to meet with Everett. He made a big issue over the fact that my licensure was dated to 2019 and that I was not supposed to get paid for the PhD. He said he had been assured that he would not have to pay me for a class AAAA teacher's license.<br><br>I explained to him what had happened, as I had with Dean and Staten. Staten did not have an issue with the pay increase since the MDOE had made the approval themselves. The problem was with the District office complying.<br><br>At some point Dean called me in and told me that he had been to the MDOE to check on my pay increase. He did not tell me that he was trying to stop it; however, my conversation with Everett made me realize that they were very upset about the pay increase.<br><br>(Upon winning the election for |

| | | | |
|---|---|---|---|
| | | (See School Board Minutes) | superintendent, Dean gave himself a $5,000 promotion, as well as increased the salary of other administrators.)<br><br>• There was a school board meeting to discuss when pay increases should be given. The outcome of the board's decision was that pay increases should not start until the following year.<br><br>• It was my understanding that once a teaching unit was approved, that money was sent to the District for the teacher's salary. ??????<br><br>• If that is the case, what happened to my pay increase for the months that I was not paid (January 2010 – July 2010). |
| | | (Pay Stubs) | My pay increase did not start until August 2010.<br><br>**(It concerns me that staff all across the district can receive various stipends, promotions, and other educational opportunities and I am overlooked and denied the opportunity for advancement. I understand this if I had poor work habits and performance evaluations, but this is not the case. I have completely transformed the program I am coordinating, without the benefit of recognition, promotion, or stipend.** |
| Apr 2010 | | Capella University | • Began Capella courses in Leadership in Educational Administration since my |

| | | | |
|---|---|---|---|
| | | Online | MAPQSL recommendation was denied |
| May 2010 | | | • |
| Jun 2010 | Eric Ledlum | Capella University Online | • Admitted to the Leadership in Educational Administration program<br>• (I made inquiries into Capella prior to consideration of the MAPQSL program, and when Robert Dean refused to recommend me for the MAPQSL, I continued with the application to Capella.) |
| Jul 2010 | | | • Continuing active enrollment at Capella until anticipated graduation September next year (2011) in expectation of a promotion to an administrative position. |
| Aug 2010 | B R Jones<br><br>Michael Patton<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Christie | WCHS Principal<br><br>Security<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>(Contact Log) | • School started on 8/2/10.<br>• Door unlocked when I arrived 8/5/10<br>• Door unlocked when I arrived 8/17/10<br>• Door unlocked when I arrived 8/18/10<br>• Door unlocked when I arrived 8/31/10<br>• I reported each incident to school administrators and to security. Jones told me that maintenance or technology people had probably been in the room and forgot to lock the door. I asked if someone could review the security tapes and see what was going on. No one got back with me so I went back to Jones. Jones said they did not see anyone going in or out. I told him there was a problem somewhere. I submitted a written work order to check the door. |

|  |  |  |  | • Christie, (parent of student #1) phoned to tell me about a change in medication on 8/24/2010 @7:40 am |
|---|---|---|---|---|
| Sep 2010 |  |  |  | • Door unlocked when I arrived 9/8/10 (A student who had arrived very early was sitting in the classroom when I arrived. I asked him how he got in, and he told me the door was already opened.)<br><br>• Door unlocked. Submitted a Work Request on 9/13/10.<br><br>• Around the 4th week in September I noticed that Nicole McCardle stopped parking by the fence line and started parking in the designated area.)<br><br>• Christie (parent of #1) was asked to bring the student's medication in to the school nurse (9/15/10 @ 8:16). I informed the parent that the student was asking for the medication, but I had been waiting for her to bring the medication in. I made the parent aware that the medication had not been received at the school. The parent said she would bring some medication to the school. When I followed up with the office, they reported that the parent had not brought in any medication.<br><br>I asked Graham if she had received any medication and she said no. At this time, I sent the entire medication box to the school nurse by Graham in the event the break-ins to my class had anything to do with the medication. (Jones had given verbal consent for Day Treatment medication to be given to the students from the classroom. He |

had me to get copies of the medication log from the nurse to track administration. This has been the procedure since my assignment to Day Treatment for the last 2+ years—this being my 3rd year.

- The request was made for the medication to be administered in the classroom because it was more convenient for the student since we were relocated to the back side of the campus where we have no coverage from the elements—rain, snow, extreme heat—because there is not a tarp or cover over the sidewalk. (However, a tarp that connects the 9th grade building to the sidewalk that leads to the new gym was added very recently.)

- The special needs population that I service has been discriminated against in my opinion. We have to share a building with students who are under police watch all day. The Alternative School students are on lock down. My students asked me when we were placed in this location, "What did we do?" They thought they had done something wrong because they were in the building on the back side of campus with the extreme conduct students.

- We were put in a dirty room that we had to clean ourselves. I even paid someone to move all of the students' belongings to spare them the embarrassment of

| | | | |
|---|---|---|---|
| | | | walking across campus with their things. Nothing was done to prepare the room for us.<br><br>• Multiple requests were made to clean the carpet. I was told that the janitors did not shampoo carpet.<br><br>• I made requests for communication (a telephone or intercom system). I was told by Jones that he was working on something. To date, there has been no intercom system or telephone added to the free standing mobile unit. Also, to my knowledge, the carpet still has not been cleaned.<br><br>• I made requests for the heating and air conditioning unit to be upgraded so that my room is adequately temperature for all seasons. No modifications for the student' comfort has been made. It is very cold in winter and very hot in summer. Dean was personally asked to attend to this matter during one of his visits to the classroom. Nothing has been done. |
| | Jason Hamilton | (Previous assistant) | • Jason Hamilton inquired on 9/21/10 about my affiliation with MPE (Mississippi Professional Educators). He asked me out of the "blue" if I was a member. |
| | Coach Ron Norman | | • I learned that others were recommended for the MAPQSL program following my request that was denied. I told Coach Norman that I |

| | | | |
|---|---|---|---|
| | Coach Robert Hathorn | | heard he was participating in the summer 2010 MAPQSL program. He informed me that he and three others attended together. He did not give the names of the others. (My application was denied. I believe that I am being retaliated against.)<br><br>• Coach Hathorn was hired as the 9th grade principal at WCHS. He asked me about helping him with some of his papers for the MAPQSL course. He did not know that I was denied attendance at the program. I did not mention it to him either. This is how I learned that Robert Dean had recommended coaches and teachers from the Wayne County School District. (My application was denied. I believe that I am being retaliated against.) |
| | Christie | Parent of Student #1 | • Christie phone me at home on 9/25/10 around 4:20 pm and said that Student #1 told her that Ms Graham had been asking her to bring her medication to school and for the student to not tell me about it. After listening to the parent on this matter, I advised her to contact Jones on Monday morning. |
| | Jones | WCHS Principals | • On Monday morning, 9/27/10 I reported the concerned parent's call to Jones. He said, "The parent had no business sending the medication by the child. That is against the Handbook. I will take care of it." |
| | Luke | | • Luke came to my classroom shortly before lunch on 9/28/10 and told me to write a statement about everything I knew regarding the medication. He told me to be sure to go back two week. |

| | | | |
|---|---|---|---|
| | Jones and Luke | Principals | "Two weeks!" He sent me to the office to write the statement, and advised me not to say anything to Graham because she had to give a statement as well…. <br><br>• The security (Michael Patton) came to my classroom on 9/29/10 and told me I was wanted in the office. When we exited the building he asked, "What is Mr. Dean doing sitting over there? [pointing across the street from my classroom]. I said, "I don't know." [and kept walking]. <br><br>Jones and Luke reprimanded me for giving the students' medication from the classroom—a practice that he has allowed since he moved us to the back side of the campus. I told them I thought I was being fired. Luke said, "There's the door!" ….. <br><br>• Prior to leaving for the day, I stopped by the office to turn in my sick leave since I had a VA doctor's appointment on Monday morning. I took it to Marcus Boyles' office but he was not in, so I gave it to Jones. I told him I did not want anyone to say that I was not authorized to be out. Jones raised his voice in a hostile tone and said, "Dr. Bishop, you are not going to start coming in here and ordering me around." I told him that I was not ordering him around, I just wanted to know that I was covered for my appointment. He said, "You will be! We do not give these back!" He signed the slip and in a seemingly angry manner, gave it |

|  |  |  | at Lou Anne Stokley, the secretary.<br><br>• All the lights were on in my classroom, but the door had been locked back. Shortly after Ron Norman arrived in the Alt School, he starting printing something, which let me know that the technology staff had been in to network the printer, which Tina Harrison had told me not to have networked. The Alt School staff were not pleased with this change. I informed them that it was not my decision to make and that we could work out something by him using my computer if he really needed something. (Following the reprimand, Harrison allowed the printer to be networked without saying anything to me about it. |
|---|---|---|---|
| Oct 2010 | Dollie Graham | Assistant | • Following the reprimand, Graham started informed me that she had been told that, "Once they target you, they gon' get ya." Each day she brings up some kind of conversation about the situation to keep it going. I have asked her to drop it and let us get on with our jobs for as long as we have one . . . |

**NOTE:** I do not receive the full support of the WCSD staff. I have multiple emails where I have attempted to communicate a need for support or supplies. For example, the school nurse committed to teaching a health series to my students in Day Treatment, she did not remember to come, and when I reminded her and told her that we could do it at her convenience, she still did not initiate contact. I walked by the Comprehensive Health class one day and saw her teaching a group of students, but she could remember to come to Day Treatment. I had reached my limit with staff not keeping their commitment to my class so I confronted her on the matter. She placed blame on me. Another example, I requested "My Reading Coach" and headphones to develop my students' reading skills. I have emails reflecting these unmet requests.

This statement is not complete. However, it does offer a glimpse of the events that lead up to the letter of reprimand that I believe to be an act of retaliation, harassment, and discrimination. Graham spends most of her time texting in class, which is a handbook violation that is supposed to lead to termination. However, as a young white female, she freely and openly texts on her phone and eats in class without fear of reprimand or termination. I have cautioned her several times, but she continues. My classroom is on live video around the clock, 24/7. I fail to understand why Dollie is allowed to freely and openly use her phone in class. I do not say anything to Jones about it because it's all on the tape. I stopped using my phone to contact parents after this incident for fear that it would be used against me. Jones informed me that I could contact him via email or drop by his office if I had any questions. Since he denied telling me to give the medication from the room, I put all communication with him in writing via email. As of the date of this statement, Jones is yet to respond to any of my emails on any matter. Jones has tightened his enforcement of school rules since this incident.

If I was reprimanded for a violation of the Handbook, tell me why Graham has not been terminated for texting in class? Has other teachers been reprimanded for Handbook violations? There are multiple violations each day that have gone unchecked (until now). I have pictures and audio recordings as support. Since entering the Wayne County High School Campus,

- I have been harassed about my doctoral degree ... called stupid by my peers for sitting in the classroom with a PhD, while other white staff is elevated or promoted within the system.
- I am transitioning into secondary education from adult education.
- I have had excellent teacher evaluation since starting with the WCSD in 2006.
- I work well with my data team members. (During my first year my SPED peers harassed me to no end.)
- I continue to improve myself by participating in professional development training and classes.

Neither Robert Dean nor B R Jones offered me an explanation for not signing my application packet for the MAPQSL or for denying me other opportunities for advancement. I relate this situation primarily to harassment, retaliation, as well as discrimination against me and against my exceptional needs students, who are not provided adequate accommodations.

Submitted October 10, 2010,

*Detra Bishop*
Detra Bishop